COURT OF CHANCERY
OF THE
STATE OF DELAWARE

LORI W. WILL
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

July 20, 2026

Stephen B. Brauerman, Esquire
Abraham C. Schneider, Esquire
Bayard, P.A.
600 North King Street, Suite 400
Wilmington, Delaware 19801

Timothy S. Martin, Esquire
Michael A. Ingrassia, Esquire
White and Williams LLP
600 North King Street, Suite 800
Wilmington, Delaware 19801

RE: *Ruby Hollow, LLC v. Tharp and Associates, LLC*,
C.A. No. 2024-0318-DG (LWW)

Dear Counsel:

A limited liability company seeks to hold a minority member liable for breach of fiduciary duty. The company is manager-managed, and the two managers each hold 31% stakes. The defendant member holds just 7% and lacks any structural control under the company's governing documents. To bridge this gap, the plaintiff relies on a distorted theory of "transaction-specific control."

A Magistrate in Chancery recommended dismissal for failure to identify a transaction that the defendant member dominated or controlled. After a de novo review, I agree that the plaintiff has not stated a viable claim. But I reach that conclusion on a more fundamental ground: the defendant member simply owed no fiduciary duties. The plaintiff's exceptions are overruled, and the dismissal of this suit with prejudice is affirmed.

## I.  BACKGROUND

Plaintiff Ruby Hollow, LLC is a Delaware limited liability company managed by Geoff Stanley and Douglas Meadow.[1]  Each of the managers holds a 31% membership interest in Ruby Hollow through an affiliated entity.[2]

Defendant Tharp and Associates, LLC was a minority, non-managing member of Ruby Hollow.[3]  In exchange for introducing the company to an acquisition opportunity, Tharp was granted a 7% membership interest and hired as a consultant.[4] Tharp held its membership interest from July 2018 to December 2021.[5]

---

[1] Verified Am. Compl. (Dkt. 10) ("Am. Compl.") ¶ 1; *see* Ex. A to Aff. of V. Tharp in Supp. of Def.'s Opening Br. in Supp. of Mot. to Dismiss (Dkt. 17) (Ruby Hollow Limited Liability Company Operating Agreement ("LLC Agreement")) § 3.1.  The LLC Agreement is integral to the Amended Complaint because "Plaintiff alleges Defendant's membership, introduces facts concerning Defendant's management structure, and alleges that Defendant's minority membership contributed to the alleged breaches of fiduciary duty." Magistrate's Letter Decision Granting Mot. to Dismiss (Dkt. 33) ("Final Report") (citing Am. Compl. ¶¶ 7, 15); *see also Orman v. Cullman*, 794 A.2d 5, 15-16 (Del. Ch. 2002).

[2] *See* Final Report 3 ("The managers are Doug Meadow and Geoff Stanley; through their entities, the managers held a 62% interest in Ruby Hollow at the time of its formation."); LLC Agreement Schedule A (reflecting a combined 62% equity interest held by managing entities Riverfield LLC and Douglas E. Meadow Consulting LLC).

[3] *See* Am. Compl. ¶¶ 2, 7, 15; Final Report 4 ("Defendant remained a minority member in Ruby Hollow from Ruby Hollow's inception . . . .").

[4] *See* Am. Compl. ¶¶ 9-11; LLC Agreement Schedule A; Final Report 4 ("Plaintiff issued Defendant a 7% equity interest in Ruby Hollow to align the parties' interests.").

[5] Am. Compl. ¶ 7.

This dispute centers on Tharp's alleged misconduct and communications with third parties from 2019 through 2022. Tharp took an "active role" in Ruby Hollow's affairs, including by communicating with minority stockholders of a Ruby Hollow subsidiary and by overseeing security and inspection at a mining site.[6] It allegedly concealed these activities and related operational failures from Ruby Hollow's managers.[7] The plaintiff contends that Tharp took on "a fiduciary duty to Ruby Hollow" by "controlling" the mining site inspection and diverting information flow from the managers.[8]

On March 27, 2024, Ruby Hollow sued Tharp in this court.[9] It filed the operative Amended Complaint on July 26, 2024, advancing a single claim for breach of fiduciary duty.[10] Tharp moved to dismiss under Court of Chancery Rule 12(b)(6), arguing that it owed no fiduciary duties to Ruby Hollow.[11]

---

[6] *Id.* ¶¶ 12-14.

[7] *See id.* ¶¶ 13(b), 14(e).

[8] *Id.* ¶ 15.

[9] Dkt. 1.

[10] Dkt. 10. After the motion to dismiss was fully briefed, the case was reassigned to Magistrate Gibbs on April 29, 2025. Dkt. 26. Oral argument was presented to Magistrate Gibbs on August 28, 2025. Dkt. 32.

[11] Dkt. 17.

On January 29, 2026, Magistrate Gibbs issued a Final Report recommending that the Amended Complaint be dismissed with prejudice for failure to state a claim on which relief can be granted.[12] The Magistrate concluded that the plaintiff did not "allege[] a 'transaction' that was (or could have been) presented to the Managers" or "'well-pled facts supporting a reasonable inference' that [Tharp] dominated or controlled the Managers of Ruby Hollow during a corporate decision-making process."[13] The plaintiff took exception to the Final Report, arguing that Tharp's actions and concealment of information established "transaction-specific control" such that Tharp owed fiduciary duties in connection with those matters.[14]

## II. ANALYSIS

The Court of Chancery applies a de novo standard when reviewing exceptions to a Magistrate's final report.[15] The exceptions are assessed "on the record before the Magistrate in Chancery, unless the Reviewing Judge determines to expand the record for good cause shown."[16] Because the present exceptions do not raise issues

---

[12] Final Report 18.

[13] *Id.* at 16.

[14] *See* Pl.'s Opening Br. in Supp. of Exceptions (Dkt. 36) ("Pl.'s Opening Br.") 11-12. The exceptions were reassigned to me on February 11, 2026. Dkt. 35.

[15] *See* Ct. Ch. R. 144(a); *DiGiacobbe v. Sestak*, 743 A.2d 180, 184 (Del. 1999).

[16] Ct. Ch. R. 144(e).

requiring credibility determinations or that warrant another hearing, I resolve them on the papers.[17]

Ruby Hollow asserts that the Magistrate erred by requiring the identification of a specific transaction presented to the managers as a predicate for applying "transaction-specific control."[18]  It argues that the court "should find that control of information relating to a transaction—the manipulation of information flow to a board or managers—can constitute transaction-based control for purposes of imposing fiduciary duties on a controller."[19]  Tharp responds that the Magistrate correctly held the plaintiff was required to plead actual domination over a corporate decision-making process.[20]  It maintains that the plaintiff's "informational vacuum" theory is an impermissible expansion of the so-called "controller" doctrine.[21]

---

[17] *See DiGiacobbe*, 743 A.2d at 184.

[18] Pl.'s Opening Br. 7-8; *see* Final Report 14 ("To succeed on a claim under the specific control theory, a plaintiff must 'identify a[] specific transaction[] presented to or rejected by the Board.'" (quoting *Klein v. Wasserman*, 2019 WL 2296027, at *9 (Del. Ch. May 29, 2019))).

[19] Pl.'s Opening Br. 11; *see also id.* at 8, 11-13.

[20] *See* Def.'s Answering Br. in Opp'n to Exceptions (Dkt. 38) 8-10.

[21] *Id.* at 1-2, 13, 17-19.

I need not engage with the plaintiff's faulty arguments on "transaction-specific control." Whatever force that concept retains,[22] it has no application here. Tharp—a 7% member of Ruby Hollow—never possessed the structural or functional authority necessary to be treated as a controlling member. It owed no fiduciary duties under any theory of control.

In a manager-managed limited liability company, "[m]anagers and managing members owe default fiduciary duties; passive members do not."[23] Ruby Hollow's LLC Agreement provides that "all powers of the Company [are] exercised by and under the authority of, and the business and affairs of the Company [are] managed under the direction of, the Company's Managers."[24] The managers are Meadow and Stanley.[25] Tharp was merely a passive, minority member.

The plaintiff nevertheless contends that Tharp owed fiduciary duties to Ruby Hollow because Tharp "controlled two particular transactions" by manipulating the flow of company information to the managers.[26] This argument conflates conduct

---

[22] *Cf.* 8 *Del. C.* § 144(e)(2); *Frank v. Mullen*, 337 A.3d 824, 837 n.141 (Del. Ch. 2025) (observing that "[w]hether Delaware law has or should have recognized transaction-specific control is subject to a lively debate before the judiciary and in academia").

[23] *Feeley v. NHAOCG, LLC*, 62 A.3d 649, 662 (Del. Ch. 2012).

[24] LLC Agreement § 3.1.

[25] *Id.*; *see* Final Report 3.

[26] Pl.'s Opening Br. 7, 13-14; *see* Pl.'s Reply Br. in Supp. of Exceptions (Dkt. 40) 2.

with Delaware's test for whether a minority investor exercised functional control. A minority investor does not become a controlling member merely because it played an influential role in the disputed events. Rather, a minority investor must possess "such formidable voting **and** managerial power that they, as a practical matter, are no differently situated than if they had majority voting control."[27]

Absent a structural right to select a majority of the board, substantial voting power is a necessary—but not sufficient—element of this test.[28] Yet the Complaint ignores voting power entirely. The incorporated documents show that Tharp held just a 7% membership interest, and that its stake is dwarfed by those of the two managing members—each of whom holds a membership interest over four times larger than Tharp's.[29] Tharp also lacked contractual blocking rights, manager appointment or removal rights, veto rights, or any other governance rights that might

---

[27] *In re PNB Hldg. Co. S'holders Litig.*, 2006 WL 2403999, at *9 (Del. Ch. Aug. 18, 2006) (emphasis added); *In re Cysive, Inc. S'holders Litig.*, 836 A.2d 531, 553 (Del. Ch. 2003) ("[T]he analysis of whether a controlling stockholder exists must take into account whether the stockholder, as a practical matter, possesses a combination of stock voting power and managerial authority that enables him to control the corporation, if he so wishes.").

[28] *See, e.g.*, *Superior Vision Servs., Inc. v. ReliaStar Life Ins.*, 2006 WL 2521426, at *4 (Del. Ch. Aug. 25, 2006) ("[T]he focus of the inquiry has been on the *de facto* power of a significant (but less than majority) shareholder . . . ."); *Cysive*, 836 A.2d at 551-52 (explaining that to be a controlling stockholder, the stockholder must hold "a large enough block to be the dominant force in any contested . . . election").

[29] *See* LLC Agreement Schedule A; Final Report 4.

amount to managerial authority over Ruby Hollow. The notion that Tharp controlled the managers is "pure fantasy."[30]

The plaintiff's theory of control rests not on any power that Tharp wielded over Ruby Hollow, but on Tharp's conduct. The Complaint highlights Tharp's "active involve[ment]" in negotiating a mining venture and its concealment of communications from the managers.[31] These actions do not transform Tharp into a fiduciary. A passive, minority member with no structural authority does not take on fiduciary duties simply because it played a "central role" in a business strategy or had a consulting arrangement.[32]

Any obligations Tharp owed to Ruby Hollow are defined by contract: the LLC Agreement and the consulting agreement.[33] Delaware law does not convert

---

[30] *In re Delta & Pine Land Co. S'holders Litig.*, 2000 WL 875421, at *7 (Del. Ch. June 21, 2000) (calling the contention that a 4.6% stockholder was a controlling stockholder "pure fantasy" where the stockholder had fewer shares than the directors).

[31] Am. Compl. ¶¶ 12-13.

[32] *Kuroda v. SPJS Hldgs., L.L.C.*, 2010 WL 925853, at *7 (Del. Ch. Mar. 16, 2010) ("No matter how 'central' Kuroda was to the entire business endeavor, his centrality was governed by contractual duties, not fiduciary ones."); *see Beach to Bay Real Est. Ctr. LLC v. Beach to Bay Realtors Inc.*, 2017 WL 2928033, at *6 (Del. Ch. July 10, 2017) (explaining, where minority members were alleged to owe fiduciary duties, that "[c]onclusory statements that someone or something is 'a fiduciary' in a complaint will not suffice—instead there must be an allegation of an agreement supplying such a duty or a special relationship creating such a duty").

[33] *See* Ex. B to Aff. of V. Tharp in Supp. of Def.'s Opening Br. in Supp. of Mot. to Dismiss (Dkt. 17) (Finders Fee Engagement Agreement, made effective on August 22, 2018,

unfaithful service providers with small ownership stakes into fiduciaries.  To borrow Chancellor Chandler's turn of phrase in *Kuroda*: "A rose by any other name may smell as sweet, but calling [Tharp] a fiduciary here would smell of inaccuracy—and imposing upon [it] ex post some kind of fiduciary duties would reek of injustice."[34]

## III.    CONCLUSION

For the reasons explained above, the plaintiff's exceptions are overruled.  The Final Report's holding that the plaintiff failed to state a claim on which relief can be granted is adopted and affirmed.  IT IS SO ORDERED.

Sincerely yours,

*/s/ Lori W. Will*

Lori W. Will
Vice Chancellor

---

between Tharp and Ruby Hollow, as amended by a First Modification of Finders Fee and Engagement Agreement, dated December 3, 2018); *see generally* LLC Agreement.

[34] *Kuroda*, 2010 WL 925853, at *8.